UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RUTH AREIAS, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>FCA US LLC,<br><br>                                    Defendant. | Case No. 22-12470<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 11)**

## I.      Introduction

Plaintiff Ruth Areias filed this putative class action against defendant FCA US LLC (formerly, Chrysler Group LLC), alleging that a defect in certain Jeep Cherokee models allows water to leak into the sport utility vehicles, thereby causing the vehicles' electronic parking brake to inadvertently activate. ECF No. 1.

Individually and on behalf of a putative class, Areias brings claims for breach of express warranty (Count I); breach of implied warranty (Count II); and unjust enrichment (Count III). Individually and on behalf of a putative California resident subclass, she brings California state law claims for violations of the state's Unfair Competition Law (UCL), Cal. Bus. & Prof.

Code § 17200 *et seq.* (Count IV); violations of the state's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.* (Count V); violations of the state's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count VI); and breach of implied warranty under the state's Song-Beverly Consumer Warranty Act (Song-Beverly), Cal. Civ. Code § 1792 *et seq.* and under California Commercial Code § 2314 (Count VII). ECF No. 1.

FCA moves to dismiss. ECF No. 11. The parties fully briefed the motion, and the Court heard oral argument on August 30, 2023. ECF Nos. 19, 20. This matter is now ripe for decision. For the reasons below, the Court grants in part and denies in part FCA's motion.

## II.   Background

FCA manufactures Jeep brand vehicles, which it distributes and sells through its network of authorized dealerships. ECF No. 1, PageID.9. FCA distributes window stickers, brochures, and other information about its vehicles to authorized dealers who in turn pass that information to customers. *Id.*

Areias, a California resident, bought a new model-year 2019 Jeep Cherokee equipped with an electronic parking brake (the EPB) from one of FCA's authorized dealers in May of that year. *Id.* at PageID.8. Areias

alleges that she reviewed and relied on the vehicle's window sticker and discussions with certain salespeople in deciding to buy the vehicle. *Id.*

Her vehicle came with a limited warranty (the Limited Warranty) that promises to "cover[] the cost of all parts and labor needed to repair any item on [the] vehicle . . . that is defective in material, workmanship or factory preparation." ECF No. 11-2, PageID.88. The Limited Warranty's booklet provides that "[t]he warranties contained in this booklet are the only express warranties that FCA . . . makes for your vehicle." *Id.* at PageID.87. Last, it provides that the Limited Warranty and any implied warranties last for 3 years or 36,000 miles on the vehicle's odometer, whichever occurs first. *Id.* at PageID.87, 89.

Starting in January 2020, Areias started having issues with an alleged defect in her vehicle. ECF No. 1, PageID.8. She alleges that the defect allows water to leak into the vehicle causing its EPB to corrode or otherwise fail. *Id.* at PageID.1. As a result of the corrosion or failure, the EPB would inadvertently activate, stopping the vehicle while in motion or causing its rear wheels to lock up. *Id.*

Areias allegedly has had issues with this braking defect many times. *Id.* at PageID.8. She alleges that she first experienced the defect in January 2020—while trying to pull out in her vehicle, the EPB inadvertently

activated, and Areias had to try several times to disengage the EPB before it released. *Id.* Most recently, in August 2022, Areias allegedly tried to pull out, but before she could do so, she again had to try several times to disengage her vehicle's inadvertently activated EPB. *Id.*

According to Areias, FCA failed to disclose the alleged braking defect to customers. *Id.* at PageID.5. Areias alleges that in the user manuals, FCA explained "how to use the EPB system, without disclosing the risks posed by the [braking defect] due to water intrusion," that FCA "marketed the EPB as a safety feature in their [sic] brochures," and that in owner's manuals, FCA indicated that certain vehicles like Areias's "were capable of driving through standing water up to 16 inches deep without disclosing the risks posed by the [braking defect]." *Id.* at PageID.6-7.

Areias alleges that none of the sources of information she reviewed disclosed the alleged braking defect, and that, understandably, she would not have bought her vehicle, or would have paid less for it, had FCA disclosed the alleged braking defect. *Id.* at PageID.8.

As a result, Areias sues FCA. She brings express and implied warranty claims and an unjust enrichment claim on behalf of a putative class comprising "[a]ll persons in the United States who purchased or leased a 2014-2020 Jeep Grand Cherokee equipped with an Electronic

Parking Brake (the 'Class')." *Id.* at PageID.10. Further, she brings UCL, CLRA, FAL, and implied warranty claims on behalf of a subclass comprising "[a]ll Class members who reside in California." *Id.* Among other remedies, she requests "restitution, non-restitutionary disgorgement, actual damages, and punitive damages," injunctive relief, prejudgment interest, and attorneys' fees and costs. *Id.* at PageID.26.

## III.   Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Under Rule 12(b)(6), the Court may consider exhibits attached to the motion to dismiss so long as the plaintiff refers to the exhibits within the complaint and the exhibits are central to the

plaintiff's claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

## IV.  Analysis

The Court analyzes in turn each of FCA's several grounds for dismissal. Because Areias is a California resident and bought her vehicle in California, the Court applies California law to her claims. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 968, 978 & n.24 (E.D. Mich. 2022).

### A. Express Warranty (Count I)

Areias claims in Count I that "FCA breached its express warranties by selling and leasing Class Vehicles that were defective with respect to materials, workmanship or factory preparation." ECF No. 1, PageID.14. FCA argues its written warranty does not cover the alleged braking defect, Areias does not allege breach of the warranty, and no other express warranties exist.

### I.  Warranty Coverage

FCA asserts, and Areias does not dispute, that Areias's express warranty claim rests on FCA's Limited Warranty.[1] FCA argues that its

---

[1] Within her allegations as to breach of express warranty, Areias refers to her vehicle's limited warranty—that is, the Limited Warranty. *See* ECF No.

Limited Warranty does not cover the alleged braking defect. The Limited

Warranty "covers the cost of all parts and labor needed to repair any

item . . . that is defective in material, workmanship or factory preparation."

ECF No. 11-2. FCA argues that by its terms, the Warranty covers only

defects in manufacturing, whereas Areias alleges a defect only in design.

"A manufacturing defect exists when an item is produced in a

substandard condition," and "[s]uch a defect is often demonstrated by

showing the product performed differently from other ostensibly identical

units of the same product line." *Son v. Tesla, Inc.*, No. 16-02282, 2017 WL

5640545, at *2 (C.D. Cal. June 7, 2017) (citing *McCabe v. Am. Honda*

*Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002)). "A design defect, in

contrast, exists when the product is built in accordance with its intended

specifications, but the design itself is inherently defective." *Id.* (citations

omitted).

Here, Areias alleges that Class Vehicles have a defect whereby water

causes the EPBs to inadvertently activate and that the defect manifests

---

1, PageID.14 (referring to "the limited warranty promising to repair and/or
correct a manufacturing defect"); *see also id.* at PageID.13 (referring to
"warranty periods" which the Limited Warranty provides). Because Areias
refers to the Limited Warranty in her complaint and bases her express
warranty claim on it, the Court considers the Limited Warranty in ruling on
FCA's motion. *See Bassett*, 528 F.3d at 430.

under commonplace conditions, "such as those found on normal wet roads after a rainstorm." ECF No. 1, PageID.14; *See Son*, 2017 WL 5640545, at *2. Areias also alleges that the braking defect remains after FCA replaces the "faulty electronic braking components with equally defective replacement parts." ECF No., PageID.14. Although Areias' allegations include the possibility that the alleged braking defect arises from an "inherently defective" design, the allegations also show that FCA produced the Class Vehicles or their EPBs in "substandard condition[s]" such that a manufacturing defect causes the EPBs to fail in wet but normal conditions. *See Son*, 2017 WL 5640545, at *2.

FCA contends that the allegations present only a design defect because they assert that the braking defect is a systemic problem in all 1.3 million Class Vehicles. Courts have rejected this argument—"just because [Areias] plead[s] allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect." *E.g.*, *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 500 (E.D. Mich. 2021) (quoting *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288 (E.D. Mich. 2021)). It is possible the alleged braking defect arises from a design flaw, but it is equally possible that the Class Vehicles or their EPBs "were all badly built, even though well-patterned." *Id.* at 500.

Page **8** of **28**

At this stage, Areias is "not required to commit to a single theory of the origin of the [alleged braking] defect," nor should the Court create "an artificial distinction between design and materials/workmanship defects." *Id.* at 499-500. Without discovery into the alleged braking defect, "dismissal of the express warranty claim[] is not justified by a premature and uninformed classification of the alleged defect as being categorically in the realm of 'design' or 'manufacturing.'" *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D. Mich. 2017). Because the alleged braking defect could plausibly arise from either design or a manufacturing defect, dismissal at this stage is not warranted.

## II. Breach of the Limited Warranty

FCA next argues that the allegations do not show that it breached the Limited Warranty because the Limited Warranty required it to repair a defect only if a vehicle is timely presented at a dealership and found defective. According to FCA, because Areias never sought a repair, FCA did not breach its Limited Warranty obligations. Areias counters that she was not required to seek a repair because a repair would have been futile.

Areias's futility argument relies on *Benkle v. Ford Motor Co.*, No. 16-1569, 2017 WL 9486154 (C.D. Cal. Dec. 22, 2017). In *Benkle*, the plaintiffs alleged that the electronic throttle bodies in certain Ford vehicles contained

a defect causing a sudden and dramatic loss of speed during their vehicles'

operation. *Id.* at *1. To address the defect, Ford updated the vehicles'

onboard computer software to make the throttle issues less frequent and

replaced the allegedly defective throttle bodies whenever a driver

complained. *Id.* at *2. The court applied California law to conclude that

because the plaintiffs plausibly alleged that there is a "defect common to all

vehicles and that a repair would have been temporary and inadequate," the

plaintiffs "were not required to allege that they presented their vehicles for

repair to proceed at [the motion to dismiss] stage." *Id.* at *12 (citing *Keegan*

*v. Am. Honda Motor Co.*, 284 F.R.D. 504, 536, 550 (C.D. Cal. 2012)); *see*

*also In re Chevrolet Bolt*, 633 F. Supp. 3d at 976 (excusing a written

warranty's presentment-for-repair requirement for California plaintiffs

alleging "that there is a defect common to all class vehicles; that GM was

consistently unable to fix the defect; and that any repairs or mitigation that

GM offered were insufficient").[2]

---

[2] In assessing similar futility arguments, courts do not distinguish between manufacturing and design defects:  Although *Benkle* concerned a design defect, the court excused the plaintiffs from the warranty's presentment-for-repair requirement because the defect was common to all vehicles and a repair would have been temporary and inadequate. 2017 WL 9486154, *12. Likewise, *In re Chevrolet Bolt* concerned a manufacturing defect yet also excused the plaintiffs there from the same requirement for virtually the same reasons. 633 F. Supp. at 976. Both courts' futility analyses were

Likewise, Areias is not required to allege that she sought a repair under the Limited Warranty because she alleges that a repair would have been futile. According to Areias, the alleged braking defect exists in all the Class Vehicles, and FCA's warranty repairs were "ineffective . . . because FCA's practice of replacing faulty electronic parking brake components with equally defective replacement parts leaves the electronic parking brake susceptible to repeated failure." ECF No. 1, PageID.14; *see also id.* at PageID.15 ("FCA has known about the Unintended Braking Defect for years and has failed to repair or replace the Class Vehicles . . . ."). Because Areias alleges a defect "common to all vehicles" and that a repair under FCA's warranty would have been "temporary and inadequate," Areias is not required to allege she sought a repair to state an express warranty claim. *Benkle*, 2017 WL 9486154, at *12.

### III.   Express Warranties Besides the Limited Warranty

FCA's next argument challenges Areias's allegations of promises separate from the Limited Warranty. Areias alleges that FCA "marketed the EPB as a safety feature in their [sic] brochures" for the Class Vehicles, ECF No. 1, PageID.6, and that FCA "warranted in the owner's manual that the

---

defect-type neutral. As the Court avoids categorizing the alleged braking defect here, its analysis follows suit.

Class Vehicles were capable of driving through standing water up to 16 inches deep without disclosing the risks posed by the Unintended Braking Defect." *Id.* at PageID.7. Areias contends that these representations conveyed express warranties upon which she may base her express warranty claim.

FCA argues that these representations cannot support Areias's express warranty claim because they were made outside of the Limited Warranty booklet. The Limited Warranty booklet states "[t]he warranties contained in this booklet are the only express warranties that FCA . . . makes for your vehicle." ECF No. 11-2, PageID.87. FCA argues that this limitation is fully enforceable, precluding Areias from pursuing an express warranty claim based on promises outside of the Limited Warranty's scope. Areias does not respond to this argument.

The Court concludes that because the Limited Warranty booklet makes clear that the only express warranties are in the booklet and the alleged brochure and owner's manual representations are not in the booklet, Areias cannot base her express warranty claim on those represen-tations. *See Flores v. FCA US LLC*, No. 20-10972, 2021 WL 1122216, at *7 (E.D. Mich. Mar. 24, 2021) (listing cases and concluding the same).

In conclusion, Areias states a claim for breach of express warranty based on the Limited Warranty. But Areias's breach of express warranty claim is dismissed to the extent it is based on purported express warranties apart from the Limited Warranty.

## B. Implied Warranty (Counts II & VII)

Areias claims in Counts II & VII that FCA breached an implied warranty of merchantability under the Uniform Commercial Code (UCC), California's UCC, and under Song-Beverly (collectively, the implied warranty claims). The parties analyze the implied warranty claims under these laws together, and because of the laws' similarity and overlap, the Court will do so too, noting any differences as needed.

FCA seeks to dismiss the implied warranty claims for lack of privity and pre-suit notice, failure to adequately plead unmerchantability, and failure to properly allege breach. The Court analyzes each issue in turn.

## I. Privity and Pre-suit Notice

FCA argues that Areias lacks privity with FCA to assert her UCC claims because she bought her vehicle from an authorized dealer. Areias counters with an argument conflating privity with pre-suit notice, thereby failing to respond to FCA's privity argument.

Absent certain exceptions not at issue here, "a plaintiff must be in privity with a defendant" to assert an implied warranty claim under the UCC. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1183-84 (C.D. Cal. 2010); *see also Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1064 (E.D. Cal. 2022) (discussing strict scope of privity requirement). "'[P]rivity' refers to links in the chain of distribution of goods. If the buyer and seller occupy adjoining links in the chain, they are in vertical privity." *In re Toyota*, 754 F. Supp. 2d at 1183. "[I]f the retail buyer seeks warranty recovery against a manufacturer with whom [s]he has no direct contractual nexus," the manufacturer may assert lack of privity as a defense. *Id.*

Here, Areias bought her vehicle "from an authorized dealer," which she describes as independent and franchised. ECF No. 1, PageID.8-9. Without more, she does not allege that she has a direct contractual nexus with FCA and cannot bring implied warranty claims under the UCC. *See Miller*, 620 F. Supp. 3d at 1064 (applying California law to dismiss implied warranty claim where plaintiffs bought their cars from authorized dealers). Accordingly, the Court dismisses her UCC implied warranty claims.[3]

---

[3] In her response brief, Areias requests leave to amend her complaint if the Court dismisses her implied warranty claims. Later in her brief, she

This dismissal does not apply to Areias's Song-Beverly implied warranty claim. Privity is not a requirement for implied warranty claims under Song-Beverly. *Gregorio*, 522 F. Supp. 3d at 292. But Song-Beverly and UCC implied warranty claims alike are subject to a pre-suit notice requirement: "The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy . . . ." *In re Toyota*, 754 F. Supp. 2d at 1180 (citing Cal. Com. Code § 2607(3)(A)).

Even so, pre-suit notice is "not required in [an] action against a manufacturer and by purchasers against a manufacturer with whom they have not dealt." *Id.* (cleaned up). Without a privity requirement, a plaintiff asserting a Song-Beverly implied warranty claim need not have "dealt" with a manufacturer, and so need not give pre-suit notice to the manufacturer. *See id.* at 1180. Because Areias's Song-Beverly implied warranty claim does not require privity or pre-suit notice, the Court completes its implied warranty analysis only in connection to that claim.

---

requests leave to amend if the Court dismisses any of her claims. "Requesting to amend the complaint in a response brief is not proper." *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019) (citing *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014)). Further, because Areias may not now amend as a matter of course, she must file a separate motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2).

## II.    Merchantability

FCA conclusorily asserts that Areias does not allege that her vehicle is unmerchantable. Areias contends that her allegations show unmerchantability by alleging that her vehicle was not safe due to the braking defect.

To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). In vehicle defect cases, a plaintiff must allege that the defect "rendered a car unfit for its intended purpose by compromising the vehicle's safety, rendering it inoperable, or drastically reducing its mileage range." *Flores*, 2021 WL 1122216, at *9 (cleaned up); *see also id.* ("[C]ars are not merchantable merely because they are able to provide transportation.").

Here, Areias alleges that the braking defect causes the Class Vehicles' EPBs to fail without warning during normal operation, thereby stopping Class Vehicles in motion or locking up their wheels. Because a vehicle's random stops or wheel lockups may cause collisions, the alleged braking defect presents safety issues. Courts have found defects presenting "less serious safety-related problems" plausibly showed unmerchantability. *In re Chevrolet Bolt*, 633 F. Supp. 3d at 979; *see, e.g.*, *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546-47 (2014), *as modified on denial of reh'g* (July 16, 2014) (vehicle's sunroof that "opens

and closes *on its own*" was serious enough safety-related defect to implicate warranty of merchantability). Accordingly, the alleged braking defect compromises the Class Vehicles' safety, sufficiently pleading unmerchantability. *See Flores*, 2021 WL 1122216, at *9.

### III. Breach of Implied Warranty

FCA next argues that no allegations show that FCA breached its implied warranty obligations because Areias does not plead that she was denied a timely-sought repair. Areias counters that she was not required to seek a repair because it would have been futile.

To support its argument, FCA cites *Hall v. General Motors, LLC*, where the court stated that a plaintiff claiming breach of implied warranty must "seek warranty service within the period contained in the warranty." No. 19-CV-10186, 2020 WL 1285636, at *11 (E.D. Mich. Mar. 18, 2020). However, the *Hall* court applied this rule to plaintiffs governed by Illinois and Missouri laws—not plaintiffs governed by California law. *See id.* Here, the Court concluded above based on California law that Areias need not plead that she sought a repair in order to state an express warranty claim. *See supra* Section IV.A.II. The Court sees no reason to conclude otherwise with respect to implied warranty claims. Areias therefore does not need to plead that she sought a repair to state an implied warranty claim.

In conclusion, Areias fails to state implied warranty claims under the California UCC, but she states an implied warranty claim under Song-Beverly. Accordingly, the Court dismisses only the UCC implied warranty claims.

## C. Unjust Enrichment (Count III)

Areias claims in Count III that FCA "has been unjustly enriched at the expense of Plaintiff and the other members of the Class" by their leasing or purchasing of the Class Vehicles. ECF No. 1, PageID.16.

FCA argues that Areias cannot assert a claim for unjust enrichment because the Limited Warranty exists to define the parties' rights and expectations. Under California law, a court may construe an unjust enrichment claim "as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But when an express warranty covers the matter at issue, an unjust enrichment claim is not cognizable. *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 723 (E.D. Mich. 2021); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (explaining that under California law, an unjust enrichment action "does not lie when an enforceable, binding agreement exists defining the rights of the parties"). "[C]ourts will not imply a contract where there is an express contract governing the same subject matter." *Gant*, 517 F.

Supp. 3d at 723. Accordingly, courts dismiss unjust enrichment claims against automakers when a valid express warranty exists. *Id.* (listing cases). Areias's express warranty claim rests on the Limited Warranty, so the Court will not imply a contract under a theory of unjust enrichment. *See id.*; ECF No. 1, PageID.13-14.

Areias counters that her unjust enrichment claim is an alternative claim for relief, which she is entitled to plead. "When it is undisputed that a warranty covers the matter at issue, a plaintiff cannot plead an alternative quasi-contract claim." *Gant*, 517 F. Supp. 3d at 723 (dismissing unjust enrichment claim where it was undisputed that written warranty existed but disputed whether written warranty covered alleged vehicle defect). In vehicle defect cases, a warranty "covers the matter" at issue where it governs "what kind of defects the [automaker] will agree to repair." *Johnson*, 555 F. Supp. 3d at 506 (dismissing unjust enrichment claim where parties disputed scope of express warranty but did not dispute that express warranty governed what repairs FCA agreed to perform).

Here, although the parties dispute whether the Limited Warranty covers the alleged braking defect, the parties do not dispute the Limited Warranty's validity or that the Limited Warranty governs the kind of defects FCA agreed to repair for Areias's vehicle. *See id.* Because the Limited

Warranty exists and provides the scope of the express warranty for Areias's vehicle, Areias cannot plead unjust enrichment in the alternative. *See Gant*, 517 F. Supp. 3d at 723.

Areias attempts to save her claim by arguing that the Limited Warranty cannot restrict her from asserting an unjust enrichment claim because "a warranty does not impose any . . . obligations restricting a buyer's right to sue." ECF No. 19, PageID.158. However, the Limited Warranty does not purport to impose obligations restricting Areias from bringing an unjust enrichment claim. Rather, it constitutes contractual terms promising a repair for certain defects, and the Court cannot rewrite those terms with its own ideas of fairness. *See* ECF No. 11-2; *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) ("When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." (citation omitted)). Areias's alternative argument therefore fails, and the Court dismisses Areias's unjust enrichment claim.

### D. California's Unfair Competition Law (Count IV)

Areias claims in Count IV that FCA violated the UCL by engaging in fraudulent, unfair, and unlawful business acts that caused her and

California class members to suffer "financial harm . . . in the form of repair costs and diminution of value to their Class Vehicles," plus "out-of-pocket losses." ECF No. 1, PageID.19-20.

FCA argues that Arieas's UCL claim fails because adequate legal remedies are available to Areias. "[T]he UCL provides only for equitable remedies." *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (citation omitted). But in federal court, "[e]quitable relief is not appropriate where an adequate remedy exists at law"—that is, where adequate money damages are available. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (citation omitted). Accordingly, a plaintiff bringing a UCL claim in federal court must establish that money damages are inadequate before securing equitable relief. *See Sonner*, 971 F.3d at 844; *see also Klaehn v. Cali Bamboo LLC*, No. 21-cv-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (applying *Sonner* and affirming dismissal of UCL claims where plaintiffs "failed to make any plausible allegation that they lacked an adequate remedy at law.").

Here, Areias's alleged injury is that as a result of "FCA's omissions of material facts, as well as its post-sale refusal to remedy the [braking defect] or pay for necessary repairs," she suffered "repair costs and diminution of value" to her vehicle and "out-of-pocket losses." ECF No. 1, PageID.19-20.

Page **21** of **28**

As other courts have found and as Areias's request for money damages indicates, Areias's injury "is exactly the type of injury for which legal remedies are appropriate." *E.g.*, *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (citations omitted) (holding legal remedies appropriate for "loss of money and/or loss in [vehicle] value"); *see* ECF No. 1, PageID.26. Without more allegations, money damages would be adequate to remedy Areias's alleged "financial harm." ECF No. 1, PageID.19.

Areias argues that she does not have an adequate legal remedy because, as her allegations state, money damages are not "equally prompt and certain and in other ways efficient" as would be equitable relief. ECF No. 19, PageID.165; ECF No. 1, PageID.20. Specifically, she alleges that she may recover a different amount in restitution compared to money damages and that "few[er] elements" require proof for her UCL claim compared to her claims for money damages. ECF No. 1, PageID.20. Courts have rejected this argument. *See Stafford v. Rite Aid Corp.*, No. 17-CV-1340, 2023 WL 2876109, at *5 (S.D. Cal. Apr. 10, 2023) (listing cases). That Arieas could more easily secure equitable remedies which provide greater relief compared to potential legal remedies does not show that no

adequate legal remedies exist to address Areias's alleged financial harm. *See Sharma*, 524 F. Supp. 3d at 908.

Areias also argues that she may plead alternative claims seeking both equitable and legal remedies. However, the issue is not whether Areias may seek alternative claims for relief. Instead, it is whether she may seek equitable relief at all if her complaint does not show the inadequacy of legal remedies. As the Court concludes, Areias may not seek equitable remedies because she does not show the inadequacy of legal remedies. *See Sonner*, 971 F.3d at 844. Accordingly, the Court dismisses her UCL claim. *See Klaehn*, 2022 WL 1830685, at *3.

### E. Fraud-based Claims (Counts V & VI)

Areias claims in Counts V and VI that FCA violated the CLRA and the FAL by making representations about the Class Vehicles while failing to disclose material facts about the alleged braking defect. ECF No. 1, PageID.20-24. The parties do not dispute that Areias's CLRA and FAL claims rest on a theory of fraudulent omission.

FCA argues that Areias's fraudulent omission claims fail because she does not identify a specific representation that she personally saw and upon which she relied. Areias suggests that she need not do so because she nonetheless shows that FCA breached a duty to disclose the alleged

braking defect by making partial representations about the Class Vehicles' electronic parking brake.

To state a fraudulent omission claim under the CLRA and FAL, a plaintiff must plead an omission that was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006). Under California law, the defendant's duty to disclose may arise in one of the following four situations: "(1) when the defendant is in a fiduciary relationship with the plaintiff, (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff, or (4) when the defendant makes partial representations but also suppresses some material fact." *Becerra v. GM LLC*, 241 F. Supp. 3d 1094, 1107 (S.D. Cal. 2017) (citation omitted).

A duty to disclose based on a partial representation may arise when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 755 (E.D. Mich. 2017) (citation omitted). Important here, a plaintiff must "plead reliance on at least some misleading partial representations." *Id.* (quoting *Opperman v.*

*Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015)); *see also Hoffman v. Ford Motor Co.*, No. 8:20-cv-00846, 2021 WL 3265010, at *4 (C.D. Cal. Mar. 31, 2021) (stating that standing under FAL and CLRA "mandate[s] allegations of actual reliance"). Plaintiffs may not satisfy the reliance requirement merely by alleging that the defendant made material omissions. *See Hoffman*, 2021 WL 3265010, at *5 (listing cases and dismissing FAL and CLRA claims because plaintiffs did not allege "*they* read and relied upon any statement" in alleged partial representations in owner's manual and advertisements).

Here, Areias alleges that FCA made "partial disclosures in its user manuals about how to use the EPB system, without disclosing the risks posed by the [braking defect] due to water intrusion," "marketed the EPB as a safety feature in their [sic] brochures," and "warranted in the owner's manual that the Class Vehicles were capable of driving through standing water up to 16 inches deep without disclosing the risks posed by the [braking defect]." ECF No. 1, PageID.5-7. Although she contends that these representations gave rise to a duty to disclose the alleged braking defect, ECF No. 19, PageID.167, she does not allege that she was exposed to or relied on the representations. Without any allegations showing that she ever saw, heard, or relied on EPB-related statements in user manuals,

brochures, or owner's manuals, Areias's fraudulent omission theory fails. *See Beck*, 273 F. Supp. 3d at 755-56. Accordingly, the Court dismisses her CLRA and FAL claims.[4]

**F. Standing to Bring Claims on Nationwide-Class Basis**

Areias brings certain claims on behalf of a putative nationwide class. FCA argues that Areias lacks standing to bring claims on a nationwide-class basis because she does not allege injury in any state other than California and does not plead claims under the laws of all fifty states. Arieas counters that whether she may represent a nationwide class depends only on whether she may certify the class, which is an inquiry to be decided later at the class certification stage.

FCA supports its argument by citing to *Flores*, 2021 WL 1122216, at *25. In *Flores*, the court held that the named plaintiffs lacked standing to bring claims on behalf of a nationwide class because they "do not plead viable warranty . . . claims under the laws of each of the fifty states." *Id.* However, the court also noted the numerous "conflicting decisions in this

---

[4] FCA argues that Areias's claim for punitive damages should be dismissed because she has no legal basis on which to recover punitive damages. Areias correctly counters that the CLRA allows her to recover punitive damages. *See* Cal. Civ. Code § 1780(a). But her counterargument fails now that the Court dismisses her CLRA claim. Accordingly, the Court also dismisses her request for punitive damages.

district" about "whether a district court should rule a plaintiff lacks standing to bring a nationwide class before a motion for class certification has been filed." *Id.* at *24. Without reconciling the decisions or meaningfully explaining its reasoning, the court followed the line of decisions holding that courts should determine a plaintiff's standing to represent a nationwide class before class certification. *See id.* at *24-25.

Recognizing the conflict on the issue, the Court finds that whether Areias has standing to represent a nationwide class is a question properly resolved at the class certification stage, not the motion to dismiss stage. The weight of authority supports the same conclusion. *See Johnson*, 555 F. Supp. 3d at 494-99 (identifying two federal circuit courts that have held the same and noting congruity with relevant Sixth Circuit cases). As the Second Circuit articulated well, class actions "necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate . . . . [So,] it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018). Accordingly, at this stage the Court

declines to dismiss Areias's remaining claims brought on a nationwide-class basis.

## V.     Conclusion

For the reasons above, FCA's motion to dismiss (ECF No. 11) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that the Court **DISMISSES** (1) the express warranty claim (Count I) based on any purported express warranties apart from the Limited Warranty; (2) the implied warranty claim under the UCC (Count II); the unjust enrichment claim (Count III); the UCL claim (Count IV); the CLRA claim (Count V); the FAL claim (Count VI); the implied warranty claim under California Commercial Code § 2314 (Count VII); and the request for punitive damages. The motion is **DENIED** in all other respects. The remaining claims are (1) the express warranty claim (Count I) to the extent it is based on the Limited Warranty only and (2) the implied warranty claim under Song-Beverly (Count VII).

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 25, 2023